1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

JOSEPH ANTHONY DIGERLAMO,

10                              Petitioner,

CASE NO. C19-1976-BJR-MAT

11          v.

REPORT AND RECOMMENDATION

12

JEFFREY A. UTTECHT,

13                              Respondent.

14

15                          INTRODUCTION

16          Petitioner Joseph Anthony DiGerolamo[1] proceeds pro se and *in forma pauperis* in this

17 habeas corpus matter pursuant to 28 U.S.C. § 2254.  Petitioner is in custody pursuant to a King

18 County judgment and sentence entered after a jury found him guilty of one count of rape in the

19 second degree.  (Dkt. 15, Ex. 1.)  The state court, on August 31, 2012, sentenced petitioner to an

20 indeterminate sentence of ninety months to life.  (*Id.*)  Petitioner's current earned release date is

21 _____

22      [1] Petitioner's filings and the record contain different spellings of his last name.  (*See* Dkt. 15, Ex. 1 ("Digerlamo" a/k/a "Di' Gerolamo") and Ex. 2 at 1, n.1 ("Digerolamo"); Dkt. 5 (DiGerolamo).)  The Court here retains in the caption the spelling previously utilized for purposes of consistency with the docket, while

23 otherwise adopting the spelling utilized by petitioner and/or state court.

REPORT AND RECOMMENDATION
PAGE - 1

1    January 11, 2021.  (*Id*., Ex. 2.)

2         Petitioner raises eleven grounds for relief in his habeas petition.  (Dkt. 5.)  Respondent

3    submitted an answer, along with relevant portions of the state court record.  (Dkts. 14 & 15.)  Now,

4    having considered the petition, the answer and record, and the parties' replies (Dkts. 16-18), the

5    Court recommends the habeas petition be DENIED and this case DISMISSED.

6                                        BACKGROUND

7         The Washington Court of Appeals described the underlying facts in this case as follows:

8         The evidence presented at trial established the following facts. In May 2009,
9    29-year-old SB traveled to the Seattle area from her home in Victoria, British
     Columbia with her 6-year-old daughter. The purpose of SB's trip was to visit
10   relatives and celebrate her grandmother's 83rd birthday. SB and her daughter
     stayed with SB's aunt, Glennis Johnny, and her aunt's husband, Joseph
11   Digerolamo.

12        The day after SB arrived from Canada, there was a party at her aunt's house.
     Around 8 p.m., after most of the guests left the party, SB, her aunt, and a few other
13   adult friends and relatives stayed up drinking whisky. According to SB, she did not
     usually drink, and "nursed" the first drink for a long time. Report of Proceedings
14   (7/30/2012) (RP) at 299. Digerolamo, who was not drinking, made several
     "teasing" remarks to SB, telling her to "quit being a sissy drinker and to drink up."
15   RP at 300. SB could not say how many drinks she had. SB was visibly intoxicated
     and remembered "pretty much nothing" after her aunt brought out a second bottle.
16   RP at 304. When the party broke up and everyone went to bed, there were only four
     people left in the house-SB, her daughter, her aunt, and Digerolamo.

17        SB remembered climbing in bed with her daughter and, sometime later,
18   rushing to the bathroom and vomiting repeatedly in the sink. While she was still in
     the bathroom sitting on the lid of the toilet seat, Digerolamo came in and asked if
19   she was okay. The next thing she remembered was waking up in the dark and
     feeling a tongue inside her vagina. She moved her hand to push the person's head
20   away, and then passed out again.

21        When she woke up in the morning, SB cried when she realized what had
     happened during the night. SB's aunt came in and after talking to SB, left the room
22   and asked Digerolamo, "What did you do?" RP at 309. He denied doing anything.
     When SB's aunt went into the kitchen, she noticed a broken bottle of vodka on the
23   counter that had not been there the night before and an open window with the screen
     pushed out. Digerolamo called 911.

REPORT AND RECOMMENDATION
PAGE - 2

1

2          Digerolamo greeted the police officer who responded to the call and told
       her he believed the house had been burglarized. He showed the officer the broken
3      bottle, then directed her to the open window, stating that it was the likely point of
       entry. The officer noted that the window screen was intact, and Digerolamo
4      admitted he had replaced the screen. The officer asked whether anything was
       missing, Digerolamo said he did not know but reported that his niece had been
5      assaulted.

6          After talking to SB, another officer took her to a hospital where a nurse
       performed a sexual assault examination and rape kit. Digerolamo's DNA
7      (deoxyribonucleic acid) matched the profile taken from SB's vagina and
       underwear. The State charged Digerolamo with rape in the second degree.
8      Following a trial, the jury convicted him as charged. Digerolamo appeals.

9   (Dkt. 15, Ex. 3 at 1-3 (footnotes omitted).)

10       Petitioner timely appealed.  Through counsel, petitioner alleged the "State failed to prove

11  beyond a reasonable doubt S.B. was incapable of consent due to mental incapacity or physical

12  helplessness."  (*Id*., Ex. 4.)  Petitioner also filed pro se a statement of additional grounds, alleging:

13  a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); warrantless DNA swabs/samples;

14  recording of petitioner without prior *Miranda* warning; that no one, including the victim, identified

15  him as the perpetrator; mishandling of evidence by the State; inadequate DNA testing; and

16  numerous violations of *Brady v. Maryland*, 373 U.S. 83 (1963).  (*Id*., Ex. 5.)  The Washington

17  Court of Appeals affirmed the conviction and sentence (*id*., Ex. 3) and petitioner filed a petition

18  for review in the Washington Supreme Court, raising the same ground presented in the lower court

19  by counsel (*id*., Ex. 6).  The state supreme court denied review on September 3, 2014 (*id*., Ex. 8)

20  and the court of appeals issued its mandate on September 17, 2014 (*id*., Ex. 9).  Petitioner did not

21  seek a writ of certiorari from the United States Supreme Court.

22       On September 29, 2014, petitioner filed a superior court motion pursuant to Washington

23  Criminal Rule 7.8, asserting the State had not proven beyond a reasonable doubt the victim was

REPORT AND RECOMMENDATION
PAGE - 3

mentally incapacitated or physically helpless; that the jury misunderstood or disregarded jury instructions; and that the State failed to investigate the identity of the unknown male donor of DNA found on the victim. (*Id.*, Ex. 10.) The superior court transferred the motion to the court of appeals for consideration as a personal restraint petition (PRP). (*Id.*, Ex. 11.) The appellate court dismissed the petition (PRP No. 72889-0-I) on November 24, 2014 (*id.*, Ex. 12) and the order became final with a January 9, 2015 Certificate of Finality (*id.*, Ex.13). On December 22, 2014, petitioner filed an objection to the transfer of his prior motion as a PRP, which the superior court transferred to the court of appeals that same day. (*Id.*, Exs. 14-15.) The court again dismissed the petition (PRP No. 73289-7-I) and the order became final on August 7, 2015. (*Id.*, Exs. 16-17.)

Petitioner also, on or about December 10, 2014, filed another Rule 7.8 motion, asking the superior court to reduce the charge to second degree assault based on an absence of evidence to support the conviction of second degree rape. (*Id.*, Ex. 18.) On transfer as a PRP (No. 73472-5-I), the court of appeals found the petition successive and issued an order of dismissal that became final on September 4, 2015. (*Id.*, Exs. 19-21.) In addition, on May 28, 2015, petitioner filed a PRP in the court of appeals, alleging a due process violation through the denial of a transcript of the jury voir dire at public expense despite his indigent status. (*Id.*, Ex. 22.) The court dismissed the petition (PRP No. 73977-8-I). (*Id.*, Ex. 23.) Petitioner sought discretionary review (Cause No. 92357-4), the Washington Supreme Court denied both that motion and a motion to modify, and the order of dismissal became final on July 22, 2016. (*Id.*, Exs. 24-28.)

On or about July 20, 2015, petitioner filed a Rule 7.8 motion challenging the amount of pre-sentence detention credited against his 90-month indeterminate sentence. (*Id.*, Ex. 29.) The superior court transferred the motion to be considered as a PRP by the court of appeals, where it was dismissed (PRP No. 74378-3-I). (*Id.*, Exs. 30-31.) Petitioner sought discretionary review

REPORT AND RECOMMENDATION
PAGE - 4

1    (Cause No. 92932-7), dismissed by the Commissioner of the supreme court on October 21, 2016.

2    (*Id*., Exs. 32-33.)  Petitioner did not file a motion to modify the ruling and the dismissal became

3    final when the court of appeals issued its Certificate of Finality on January 20, 2017.  (*Id*., Ex. 34.)

4         Petitioner filed another Rule 7.8 motion on September 6, 2016, alleging insufficient

5    evidence to convict on second degree rape; entitlement to a jury instruction on lesser included

6    offenses; and inadequate assistance of defense counsel through the failure to include jury

7    instructions on lesser included defenses.  (*Id*., Ex. 35.)  The motion was time-barred under Wash.

8    Rev. Code § 10.73.090 and the superior court transferred it to the court of appeals for consideration

9    as a PRP.  (*Id*., Ex. 36.)  The court of appeals dismissed the petition (PRP No. 76088-2-I) as a

10   time-barred "mixed" petition and the order became final on March 24, 2017.  (*Id*., Exs. 37-38.)

11        Petitioner proceeded to file several additional post-conviction actions, including a motion

12   for post-conviction DNA testing, a motion to compel the Department of Corrections to comply

13   with his judgment and sentence, and a PRP (No. 79531-7-I) challenging the decision by the

14   Washington Indeterminate Sentence Review Board to extend his minimum term after holding a

15   hearing under Wash. Rev. Code § 9.95.420.  (*Id*., Exs. 45-47.)  Finally, in February 2019, petitioner

16   filed another Rule 7.8 motion in superior court, arguing the arresting officer's certification for

17   determination of probable cause was untruthful based on newly discovered evidence.  (*Id*., Ex. 39.)

18   The superior court transferred the time-barred motion for consideration as a PRP and the court of

19   appeals dismissed the petition (PRP No. 79913-4-I) as successive under Wash. Rev. Code §

20   10.73.140.    (*Id*., Exs. 40-41.)   The Deputy Commissioner of the Washington Supreme Court

21   subsequently denied a motion for discretionary review (Cause No. 97614-7) and the order of

22   dismissal became final on February 12, 2020.  (*Id*., Exs. 42-44.)

23   / / /

REPORT AND RECOMMENDATION
PAGE - 5

<u>DISCUSSION</u>

Petitioner raises eleven grounds for relief in this habeas proceeding, summarized as follows:

1. Warrant issued based upon false probable cause by oath in violation of USCA Amendment IV.

2. Deprived of life, liberty or property without due process of law, in violation of USCA Amendment V.

3. Ineffective assistance of both trial and appellate counsel in violation of USCA Amendment VI.

4. The State inflicted cruel and unusual punishment by incarcerating DiGerolamo in violation of USCA Amend. VIII.

5. The State deprived DiGerolamo of liberty and property without due process of law in violation of USCA Amend. XIV.

6. The State violated DiGerolamo's Universal Declaration of Human Rights (UDHR) Article Three by interfering with his right to life, liberty and security of person.

7. The State violated DiGerolamo's UDHR Article Seven by not giving him equal protection of the law.

8. The State violated DiGerolamo's UDHR Article Eight by not allowing an effective remedy by tribunal.

9. The State violated UDHR Article Ten by not allowing a fair and impartial tribunal regarding the criminal charges against him.

10. The State violated UDHR Article Eleven by not guaranteeing what is necessary for his defense.

11. The State violated DiGerolamo's UDHR Article Twelve by interfering with his right to the protection of the law against his privacy, family, home or correspondence, and by attacking his honor and reputation.

(Dkt. 5.)

Respondent argues the habeas petition is time-barred under 28 U.S.C. § 2244(d) and that

REPORT AND RECOMMENDATION
PAGE - 6

1    petitioner does not show his entitlement to an exception to the statute of limitations.  Petitioner

2    disputes respondent's contentions.  The Court, for the reasons set forth below, agrees with

3    respondent that the petition is untimely under § 2244(d) and should be denied and this action

4    dismissed on that basis.

5    A.    Statute of Limitations

6        Pursuant to 28 U.S.C. § 2244(d)(1), a one-year statute of limitations applies to § 2254

7    habeas actions.  That period of limitation runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).

        The period of limitation usually commences when the criminal judgment becomes final

under state law; specifically "the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review[.]" § 2244(d)(1)(A).  The period

of direct review ordinarily includes the ninety-day period in which a petitioner may file a petition

for writ of certiorari with the United States Supreme Court, whether or not the petitioner actually

files such a petition.  *See Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012); *Bowen v. Roe*, 188

REPORT AND RECOMMENDATION
PAGE - 7

F.3d 1157, 1159 (9th Cir. 1999); *see also* Sup. Ct. Rule 13(1).

The one-year limitations period is tolled for any properly filed collateral state challenge to the pertinent judgment or claim. 28 U.S.C. § 2244(d)(2). "Collateral review" means "a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Wall v. Kholi*, 562 U.S. 545, 553 (2011). Collateral review does not include petitions for federal habeas relief. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). Nor would collateral review include post-conviction motions for discovery or for appointment of counsel "which generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." *Kholi*, 562 U.S. at 556, n.4; *accord Ramirez v. Yates*, 571 F.3d 993, 999-1000 (9th Cir. 2009).

Whether a collateral challenge is "properly filed" is a question of state law. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). A petition denied by a state court as untimely under state law is not properly filed for purposes of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005) ("[W]e hold that time limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."); *accord Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007); *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005). Also, once the statute of limitations period begins to run, a state collateral action merely pauses the running of the clock; it does not restart or revive the limitations period. *Larsen v. Soto*, 742 F.3d 1083, 1088 (9th Cir. 2013) ("'[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed.'") (quoting *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003)); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).

In this case, petitioner does not set forth any basis for the application of § 2244(d)(1)(B),

REPORT AND RECOMMENDATION
PAGE - 8

1    (C), or (D) to his case, and the statute of limitations began to run on the date on which the judgment

2    became final, § 2244(d)(1)(A).  Because petitioner did not seek a writ of certiorari in the United

3    States Supreme Court, his judgment and sentence became final for federal habeas purposes when

4    the time for seeking such a writ expired on December 2, 2014, ninety days after the September 3,

5    2014 Washington Supreme Court order denying his petition for review.  His one-year statute of

6    limitations under § 2244(d)(1) would have begun to run on the following day, December 3, 2014.

7    *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002).  However, prior to that date, petitioner

8    had already begun to pursue collateral review actions in state court.  He filed the last of these

9    timely petitions in July 2015.  (Dkt. 15, Ex. 29.)  The subsequent PRP, filed in September 2016,

10    was untimely under state law (*see id.*, Exs. 36-37) and therefore not a properly filed collateral

11    challenge serving to toll his statute of limitations.  *Pace*, 544 U.S. at 416-17.

12        The date on which a petitioner's state PRP becomes final or no longer pending for the

13    purposes of § 2244(d) is a question of state law.  *See Carey v. Saffold*, 536 U.S. 214, 219-20 (2012)

14    ("The definition of 'pending' for the purposes of statutory tolling [under § 2244(d)(2)] is a question

15    of state law."); *see also Hemmerle v. Arizona*, 495 F.3d 1069, 1077 (9th Cir. 2007).  Recently, the

16    Washington Supreme Court held that a state PRP becomes final under Washington State law when

17    the certificate of finality is issued.  *Certification from United States Court of Appeals, Ninth Circuit*

18    *in Phonsavanh Phongmanivan v. Haynes*, 195 Wn.2d 309, 314-17 (2020) ("In Washington, a

19    certificate of finality is more than a redundant instrument of general notice. The date of issuance

20    of the certificate of finality by the clerk of the appropriate appellate court establishes the date of

21    finality for a PRP or other state collateral proceeding.")  In this case, the Washington Court of

22    Appeals issued its Certificate of Finality in relation to the timely July 2015 PRP on January 20,

23    2017.  (Dkt. 15, Ex. 34.)  Petitioner's federal habeas statute of limitations therefore expired one

REPORT AND RECOMMENDATION
PAGE - 9

year later, on January 22, 2018.[2]

As respondent observes, the other post-conviction actions petitioner filed did not toll the statute of limitations.  Petitioner's motion for post-conviction DNA testing (Dkt. 15, Ex. 45) and his motion to compel the Washington Department of Corrections to comply with his sentence (*id.*, Ex. 46) did not toll the limitations period because they did not call for review of the underlying judgment and sentence. *Kholi*, 562 U.S. at 553.  The final two PRPs, filed in February 2019 (Dkt. 15, Exs. 39 & 47) and thus over a year after the expiration of the limitations period, could not restart, revive, or otherwise toll the statutory period of limitation under § 2244(d).  *Ferguson*, 321 F.3d at 823.

Petitioner signed and filed his federal habeas petition on December 3, 2019 (Dkt. 1-1), almost two years after his statute of limitations had expired on January 22, 2018.  Petitioner's untimely petition is subject to dismissal unless he can show his entitlement to equitable tolling or a credible claim of actual innocence.

B.   Equitable Tolling

The one-year statute of limitations under § 2254(d) is subject to equitable tolling.  *Holland v. Florida*, 530 U.S. 631, 645-46 (2010); *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).  Equitable tolling is available "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of

---

[2] Respondent recognized this date as an alternative, while asserting petitioner's one-year period of limitation expired on November 22, 2017.  That is, respondent maintained the petition ceased pending on November 21, 2016, when the time for filing a motion to modify the ruling denying petitioner's motion for discretionary review expired, thirty days after the October 21, 2016 ruling.  *See Phongmanivan v. Haynes*, 918 F.3d 1021, 1022-24 (9th Cir. 2019) (certifying to the Washington Supreme Court the question of whether the date of the Washington State Supreme Court's denial of review, or the date stated on the Washington Court of Appeal's certificate of finality is the date that ends statutory tolling.")  However, under either date, petitioner's federal habeas petition would not be timely.

REPORT AND RECOMMENDATION
PAGE - 10

1  his untimeliness." *Laws*, 351 F.3d at 922 (internal quotation marks and quoted source omitted).

2  To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights

3  diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely

4  filing." *Holland*, 530 U.S. at 649 (quoting *Pace*, 544 U.S. at 418) (emphasis deleted).  In other

5  words, equitable tolling may be appropriate when external forces, rather than petitioner's lack of

6  diligence, prevent timely filing. *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).

7        Petitioner did not set forth any basis for equitable tolling in his petition.  (*See* Dkt. 5.)  In

8  his reply, petitioner argues his petition is not time barred because he exhausted his state court

9  remedies and that the ineffectiveness of his trial and appellate counsel constituted "cause and

10  prejudice" excusing his procedural default.  (Dkt. 18 at 1, 11.)  In so doing, petitioner confuses

11  two distinct statutory requirements to his federal habeas filing, namely, the exhaustion of his

12  available state court remedies prior to filing a habeas petition under 28 U.S.C. § 2254(b), and the

13  timeliness of his petition under § 2244(d).  As discussed above, petitioner failed to timely file his

14  habeas petition.  Whether or not petitioner properly exhausted any of his claims, his habeas petition

15  is barred by the applicable statute of limitations.  Nor, for the reasons discussed below, does

16  petitioner otherwise demonstrate his entitlement to equitable tolling through the assertion of

17  ineffective assistance of counsel.

18        Attorney misconduct may constitute extraordinary circumstances justifying equitable

19  tolling in some circumstances, such as where counsel effectively abandons a client. *Holland*, 560

20  U.S. at 652-53. *See, e.g, Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (statute of limitations

21  equitably tolled where attorney was retained to prepare and file a habeas petition for incarcerated

22  inmate, failed to do so, and then disregarded requests to return files pertaining to the case until

23  well after the petition was due).  However, mere negligence on the part of an attorney does not rise

REPORT AND RECOMMENDATION
PAGE - 11

1   to that level. *See Maples v. Thomas*, 565 U.S. 266, 281 (2012) (restating "that an attorney's

2   negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a

3   statutory time limit") (citing *Holland*, 560 U.S. at 651-52, and *Lawrence v. Florida*, 549 U.S. 327,

4   336-37 (2007)). *Cf. Luna v. Kernan*, 784 F.3d 640, 646-49 (9th Cir. 2015) (finding counsel

5   affirmatively misled the petitioner to believe a timely petition had been filed, in addition to

6   committing other professional misconduct, thereby transcending garden variety negligence and

7   constituting an extraordinary circumstance).

8        Petitioner argues the ineffectiveness of his trial and appellate counsel through the failure

9   to argue the validity of the charges against him. (*See* Dkt. 5 at 8, 18.) Specifically, he asserts

10   ineffective assistance in the failure to use the fact "the state examiner concluded that there [was]

11   no evidence of saliva or DNA discovered inside the vagina" of the victim "or any acid

12   [phosphatase] from the female organs were ever found at trial." (Dkt. 16 at 7-8.) As discussed

13   below, this evidence was presented at trial and did not undermine the validity of the conviction.

14   Moreover, even assuming petitioner's counsel could or should have used this information and that

15   the failure to do so constituted ineffective assistance, the failure to pursue particular issues or

16   claims, while otherwise providing petitioner with representation, does not constitute abandonment

17   or other extraordinary circumstance justifying equitable tolling. *See Towery v. Ryan*, 673 F.3d

18   933, 942-43 (9th Cir. 2012) (finding no abandonment where counsel omitted a colorable

19   constitutional claim, but otherwise acted diligently by presenting numerous other claims and

20   arguments on petitioner's behalf), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798

21   (9th Cir. 2015) (en banc).

22        As stated above, equitable tolling of the statute of limitations is warranted only where,

23   despite petitioner's diligence, extraordinary circumstances beyond his control make timely filing

REPORT AND RECOMMENDATION
PAGE - 12

1    of a habeas petition impossible and caused the untimely filing.  Petitioner does not set forth any

2    basis to support a finding the filing of his habeas petition almost two years after the deadline

3    resulted from extraordinary circumstances beyond his control.  The record, if anything, suggests

4    petitioner focused on filing state-court actions both while and after his federal habeas statute of

5    limitations ran.  The Court does not, as such, find petitioner entitled to equitable tolling due to

6    extraordinary circumstances.

7    C.    Actual Innocence

8        A showing of actual innocence may also satisfy the requirements for equitable tolling.

9    *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a

10    gateway through which a petitioner may pass whether the impediment is a procedural bar ... [or]

11    expiration of the statute of limitations.").  The Court must apply the standards for gateway actual

12    innocence claims set forth in *Schlup v. Delo*, 513 U.S. 298 (1995).  *McQuiggin*, 569 U.S. at 386.

13    "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that,

14    in light of . . .  new evidence, no juror [or other trier of fact], acting reasonably, would have voted

15    to find him guilty beyond a reasonable doubt.'"  *Id*. (quoting *Schlup*, 513 U.S. at 329).  *See also*

16    *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc) ("[W]here an otherwise time-barred

17    habeas petitioner demonstrates that it is more likely than not that no reasonable juror would have

18    found him guilty beyond a reasonable doubt, the petitioner may pass through the *Schlup v. Delo*,

19    513 U.S. 298[] (1995), gateway and have his constitutional claims heard on the merits.").

20        To make a credible claim of actual innocence, a petitioner must "support his allegations of

21    constitutional error with new reliable evidence – whether it be exculpatory scientific evidence,

22    trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."

23    *Schlup*, 513 U.S. at 324.  "'[A]ctual innocence' means factual innocence, not mere legal

REPORT AND RECOMMENDATION
PAGE - 13

insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

This actual innocence exception is narrow in scope and reserved for the extraordinary case. *Calderon*, 523 U.S. at 559 (cited source omitted). "[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup*, 513 U.S. at 324. *Accord McQuiggin*, 569 U.S. at 386 (cautioning that "tenable actual-innocence gateway pleas are rare"). Indeed, allegations of actual innocence have "in virtually every case. . . been summarily rejected." *Calderon*, 523 U.S. at 559 (internal quotation marks and quoted cases omitted).

Petitioner asserts he "did not commit the crime that he was convicted of" (Dkt. 5 at 18) and that he relies on "newly discovered facts and evidence that was hidden (*Brady v. Maryland*) or not uncovered earlier during the State's trial proceedings." (Dkt. 16 at 4.) He argues the "State knew that there was no DNA evidence as stated and testified in court that could help prove [his] innocence." (*Id*. at 5.) He asserts that, under Wash. Rev. Code § 9A.44.010(1), the crime of second degree rape required evidence of "penetration", DNA, or "any evidence of any object, ever so slightly, entering the vagina[,]" and that, in this case, no such evidence has been found. (*Id*.; *see also id*. at 7 (attorneys "'should have known' and argued that there [was] no DNA evidence 'inside' of the vagina of the alleged victim (S.B.) and that the charge and claim of rape was not true.")) To support his contention, petitioner points to a statement of probable cause issued by Detective Gordon that led to his arrest and that petitioner maintains was contradicted by the State's forensic examiner, Nathan Brueeshoff, at trial. (Dkt. 5 at 5, 17-18.) As discussed below, petitioner does not set forth a credible claim of actual innocence serving to toll the statute of limitations.

In the September 2009 probable cause statement, Detective Gordon stated: "On the perineal swabs from the rape kit, they found the defendant's DNA from saliva transfer to S.B.'s vagina.

REPORT AND RECOMMENDATION
PAGE - 14

This evidence was consistent with the defendant performing oral sex on S.B." (Dkt. 18, Ex. 1 at 2.) At trial, Gordon testified Brueschoff's report provided "the probable cause [he] needed to put the paperwork together to arrest" petitioner. (Dkt. 15, Ex. 48 at 254-56.) He provided more detail during pretrial proceedings, stating the victim had reported "oral contact from the suspect . . . on her vagina," which would have "presumably left saliva, transferred some sort of DNA[,]" leading him to submit the evidence to the crime lab, which processed the evidence and found petitioner's "DNA in the swabs from [the victim's] vagina." (*Id*., Ex. 49 at 82.) The report from the crime lab, together with other factors, "sort of nailed [it] down because there was not really another good explanation of why his DNA and saliva would be in her, on her vagina[,]" and therefore "was my probable cause." (*Id*.)

Brueschoff, on direct examination, testified he identified "amylase. . . a constituent or a component of saliva[]" on both perineal vulvar swabs and underwear from the victim during initial screening conducted to determine the presence of body fluids. (*Id*., Ex. 50 at 480-81, 485.) He found no evidence of acid phosphatase in testing the underwear for semen and therefore did not "proceed to the other semen tests, because [he] didn't detect anything." (*Id*. at 484.) Thereafter, Brueschoff found DNA from both petitioner and the victim on the perineal swab, with the major DNA profile matching petitioner's DNA sample. (*Id*. at 490-92.) He also found DNA from both petitioner and the victim on a sample taken from the victim's underwear and, again, found petitioner's DNA to be the greater contributor. (*Id*. at 495-98.) He agreed these findings "were consistent with a woman, saying that she had oral sex performed on her[.]" (*Id*. at 498.) On cross-examination, Brueschoff testified: "I didn't actually do amylase testing on the [vaginal] swabs. The reason I wouldn't necessarily do that is in a case of an oral assault, for example, it would be very difficult to get a large amount of amylase as far internally as that body swab is generally

REPORT AND RECOMMENDATION
PAGE - 15

1  taken.  So we don't typically test vaginal swabs for amylase." (*Id*. at 514.)  Bruesehoff also

2  confirmed his earlier testimony that he found DNA from the victim and another, unknown

3  individual on a different sample taken from the victim's underwear.  (*Id*. at 497, 505-08.)

4         Because the above-described testimony was taken at trial, it is necessarily not new evidence

5  supporting petitioner's assertion of actual innocence.  The state court found as such in considering

6  a PRP in which petitioner argued the probable cause statement "was untruthful based on newly

7  discovered evidence."  (*Id*., Ex. 43 at 1-2.)  Specifically, the Deputy Commissioner of the

8  Washington Supreme Court found petitioner appeared to raise either a *Brady* claim or a challenge

9  to the sufficiency of the evidence, had already raised both claims on direct appeal, but did not

10  submit "newly discovered evidence" allowing for renewal of the issue, and instead "merely relies

11  on trial testimony and pretrial documents that were previously available."  (*Id*. at 2.)

12         Nor does petitioner present new evidence satisfying the gateway for an actual innocence

13  claim through Gordon's probable cause statement.  Contrary to petitioner's contention, the

14  statement is consistent with the testimony and other evidence at trial that petitioner's DNA was

15  found in saliva samples and consistent with the allegation of oral sex.  At most, the statement and

16  testimony reflect the use of some differing terminology and level of detail, with Bruesehoff

17  specifying he found petitioner's DNA in saliva on a perineal vulvar swab and on the victim's

18  underwear, while Gordon referred generally to DNA from saliva found on the victim's vagina.

19         Petitioner also misunderstands the basis for his conviction in suggesting his innocence

20  through the absence of penetration or DNA evidence inside of the victim's vagina.  The statute

21  under which petitioner was convicted holds: "A person is guilty of rape in the second degree when,

22  under circumstances not constituting rape in the first degree, the person engages in sexual

23  intercourse with another person: . . . When the victim is incapable of consent by reason of being

REPORT AND RECOMMENDATION
PAGE - 16

1  physically helpless or mentally incapacitated[.]" Wash. Rev. Code § 9A.44.050(1)(b). (*See* Dkt.

2  15, Ex. 1 at 1.)  "'Sexual intercourse'" is defined to include not only "any penetration, however

3  slight," and "any penetration of the vagina or anus however slight, by an object," but also "any act

4  of sexual contact between persons involving the sex organs of one person and the mouth or anus

5  of another whether such persons are of the same or opposite sex." Wash. Rev. Code §

6  9A.44.010(1).  As such, the evidence here relied upon by petitioner in support of his assertion of

7  actual innocence, in fact, supports his conviction of rape in the second degree.

8          Petitioner, in sum, does not present new reliable evidence not presented at trial and showing

9  no trier of fact could reasonably have found him guilty beyond a reasonable doubt.  He therefore

10  fails to set forth a basis for the equitable tolling of his statute of limitations through a showing of

11  actual innocence and his untimely petition is subject to dismissal with prejudice.

12                                         CONCLUSION

13          Because petitioner filed his habeas petition outside of the applicable statute of limitations

14  period, and because he does not demonstrate his entitlement to tolling of that period, his petition

15  is time-barred under 28 U.S.C. § 2244(d).  The Court recommends petitioner's federal habeas

16  petition be DENIED and this case DISMISSED.  An evidentiary hearing is not required as the

17  record conclusively shows petitioner is not entitled to relief.  A proposed Order accompanies this

18  Report and Recommendation.

19                                 CERTIFICATE OF APPEALABILITY

20          A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

21  dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

22  from a district or circuit judge.  A COA may issue only where a petitioner has made "a substantial

23  showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).  A petitioner satisfies

REPORT AND RECOMMENDATION
PAGE - 17

this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes petitioner is not entitled to a COA with respect to his claims.

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>June 12, 2020</u>**.

DATED this <u>15th</u> day of May, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 18